1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    CARLOS MANWELL DAWSON,                    No.  2:21-cv-0510 AC P

12                    Plaintiff,

13           v.                                 ORDER AND FINDINGS AND
                                                RECOMMENDATIONS
14    JEFF LYNCH, et al.,

15                    Defendants.

16

17          Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983 and

18    has requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915.

19          I.       Application to Proceed In Forma Pauperis

20          Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C.

21    § 1915(a).  ECF No. 6.  Accordingly, the request to proceed in forma pauperis will be granted.

22          Plaintiff is required to pay the statutory filing fee of $350.00 for this action.  28 U.S.C.

23    §§ 1914(a), 1915(b)(1).  By this order, plaintiff will be assessed an initial partial filing fee in

24    accordance with the provisions of 28 U.S.C. § 1915(b)(1).  By separate order, the court will direct

25    the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and

26    forward it to the Clerk of the Court.  Thereafter, plaintiff will be obligated for monthly payments

27    of twenty percent of the preceding month's income credited to plaintiff's prison trust account.

28    These payments will be forwarded by the appropriate agency to the Clerk of the Court each time

                                                  1

1  the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  28 U.S.C.

2  § 1915(b)(2).

3      II.    <u>Complaint</u>

4          A.  <u>Statutory Screening of Prisoner Complaints</u>

5        The court is required to screen complaints brought by prisoners seeking relief against "a

6  governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).

7  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

8  "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or that "seek[]

9  monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).

10        A claim "is [legally] frivolous where it lacks an arguable basis either in law or in fact."

11  <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989); <u>Franklin v. Murphy</u>, 745 F.2d 1221, 1227-28 (9th

12  Cir. 1984).  "[A] judge may dismiss . . . claims which are 'based on indisputably meritless legal

13  theories' or whose 'factual contentions are clearly baseless.'"  <u>Jackson v. Arizona</u>, 885 F.2d 639,

14  640 (9th Cir. 1989) (quoting <u>Neitzke</u>, 490 U.S. at 327), <u>superseded by statute on other grounds as</u>

15  <u>stated in</u> <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130 (9th Cir. 2000).  The critical inquiry is whether a

16  constitutional claim, however inartfully pleaded, has an arguable legal and factual basis.

17  <u>Franklin</u>, 745 F.2d at 1227-28 (citations omitted).

18        "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the

19  claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of

20  what the . . . claim is and the grounds upon which it rests.'"  <u>Bell Atl. Corp. v. Twombly</u>, 550

21  U.S. 544, 555 (2007) (alteration in original) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).

22  "Failure to state a claim under § 1915A incorporates the familiar standard applied in the context

23  of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)."  <u>Wilhelm v. Rotman</u>,

24  680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted).  In order to survive dismissal for failure

25  to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a

26  cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the

27  speculative level."  <u>Twombly</u>, 550 U.S. at 555 (citations omitted).  "[T]he pleading must contain

28  something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally

1 cognizable right of action." Id. (alteration in original) (quoting 5 Charles Alan Wright & Arthur

2 R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)).

3 "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

4 relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting

5 Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual

6 content that allows the court to draw the reasonable inference that the defendant is liable for the

7 misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). In reviewing a complaint under this

8 standard, the court must accept as true the allegations of the complaint in question, Hosp. Bldg.

9 Co. v. Trs. of the Rex Hosp., 425 U.S. 738, 740 (1976) (citation omitted), as well as construe the

10 pleading in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor,

11 Jenkins v. McKeithen, 395 U.S. 411, 421 (1969) (citations omitted).

12                    B.  Plaintiff's Allegations

13 The complaint alleges that defendants Lynch, Bobbala, Ma, and Uddin violated plaintiff's

14 rights under the Eighth Amendment when they were deliberately indifferent to his serious

15 medical needs. ECF No. 1. Plaintiff alleges that he suffers from a number of medical conditions

16 that place him in a high-risk category, including chronic sarcoidosis, pulmonary sarcoidosis lung

17 disease, and leukopenia/neutropenia. Id. at 3.

18 In November 2018, plaintiff spoke with a counselor who advised that he was being

19 transferred to a "valley fever prison," was not high-risk medical, and did not have any medical

20 conditions that required him to be housed at California State Prison-Sacramento (CSP-Sac). Id. at

21 12. Plaintiff went on a hunger strike to reinstate his high-risk medical status, cocci area

22 restriction, and medical single-cell status. Id. During his hunger strike interview, the interviewer

23 said he would speak to Bobbala about transferring plaintiff to a medical facility. Id. at 13. While

24 plaintiff was being interviewed a second time, officers searched his cell and then lied and stated

25 that plaintiff assaulted one of them. Id. The resulting write up was part of a conspiracy between

26 various individuals including Lynch. Id. On March 11, 2019, plaintiff was transferred to Kern

27 Valley State Prison where his doctor re-classified him as high-risk medical, cocci area 1, and

28 single-cell status due to medical conditions and requested a medical transfer. Id. at 15.

On May 2, 2019, plaintiff was transferred back to CSP-Sac.  Id. at 3.  Ma was assigned as plaintiff's doctor with the goal of discontinuing his medical single-cell status, cocci area 1, and high-risk medical status.  Id.  Uddin was then assigned as plaintiff's doctor and changed plaintiff to medium risk and discontinued his cocci area 1 and medical single-cell status, which Bobbala approved as part of the appeal process.  Id. at 3-4, 10.  Ma, Uddin, and Bobbala have all asserted that plaintiff's sarcoidosis is stable and that he does not qualify for medical single-cell status, and that in order to qualify for medical single-cell status he must either have a contagious disease or have killed a cellmate.  Id. 4, 6, 10.  Uddin has also downplayed plaintiff's conditions by stating that all visits are for sarcoidosis and refuses to list plaintiff's other conditions.  Id. at 6.  Plaintiff has refused to see Uddin since December 17, 2019, and Uddin and Bobbala are denying plaintiff's request to see another doctor.  Id. at 15.  Defendant Lynch allegedly denied an appeal related to a "bogus annual review" that indicated that plaintiff had single-cell status due to his pulmonary conditions, but that it was not medical single-cell status.  Id. at 7-8.

The remaining allegations relate to non-defendants.

### C.  Failure to State a Claim

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'"  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  This requires plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent."  Id. (some internal quotation marks omitted) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).  Deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety."  Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (citation and internal quotation marks omitted).

A difference of opinion between inmate and prison medical personnel—or between medical professionals—regarding the appropriate course of treatment does not by itself amount to deliberate indifference to serious medical needs.  Id. at 1058; Sanchez v. Vild, 891 F.2d 240, 242

4

1   (9th Cir. 1989).  To establish that a difference of opinion rises to the level of deliberate

2   indifference, plaintiff "must show that the course of treatment the doctors chose was medically

3   unacceptable under the circumstances."  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)

4   (citation omitted).

5        While the complaint asserts that Ma intended to revoke plaintiff's medical single-cell

6   status, cocci area 1, and high-risk medical status, there are no facts regarding what actions Ma

7   took and plaintiff alleges that Uddin is the one who actually modified his various classifications.

8   "Liability under § 1983 must be based on the personal involvement of the defendant," Barren v.

9   Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998) (citing May v. Enomoto, 633 F.2d 164, 167 (9th

10  Cir. 1980)), and "[v]ague and conclusory allegations of official participation in civil rights

11  violations are not sufficient," Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations

12  omitted).  Because plaintiff has not alleged any facts showing the necessary personal involvement

13  by Ma, he has not stated any claims against this defendant.

14       Plaintiff's claims that Uddin violated his rights by discontinuing his high-risk medical

15  status, cocci area restriction, and medical single-cell status also fail to state a claim.  Currently,

16  plaintiff has established no more than a difference of opinion as to what his proper status should

17  be, and even assuming that Uddin improperly changed plaintiff's statuses, it is unclear what

18  excessive risk to plaintiff's health Uddin ignored in doing so.  It is unclear from the allegations

19  that plaintiff qualifies for a medical order for single-cell status and, regardless, the complaint

20  establishes that custody staff has determined that plaintiff qualifies for single-cell status based on

21  his pulmonary conditions.  Plaintiff also fails to identify the risk to his health from being

22  classified as medium risk instead of high risk.  To the extent plaintiff appears to be alleging that

23  the removal of his cocci area restriction places him at greater risk for Valley Fever, defendant

24  Uddin is entitled to qualified immunity.  See Hines v. Youseff, 914 F.3d 1218, 1229 (9th Cir.

25  2019) (holding that there was no clearly established "right to be free from heightened exposure to

26  Valley Fever spores"); Chavez v. Robinson, 817 F.3d 1162, 1169 (9th Cir. 2016) (statutory

27  language permits sua sponte, pre-service dismissal on grounds of qualified immunity as well as

28  absolute immunity).  Although plaintiff's claims accrued after the claims in Hines, the state of

1  controlling and persuasive authority on this point has not changed and therefore remains

2  insufficient to clearly establish the principle on which plaintiff relies.[1]

3         The claim that Bobbala and Uddin have refused to allow plaintiff to see a different doctor

4  fails to state a claim because plaintiff does not have a constitutional right to choose his doctor.

5  See Stephen v. Tilestone, No. 2:20-cv-1841 KJN, 2020 WL 5642363, at *4 (E.D. Cal. Sept. 22,

6  2020) (prisoners have no right to medical provider of their choice) (collecting cases).

7         With respect to plaintiff's claims that Bobbala and Lynch denied his grievances, prison

8  administrators cannot willfully turn a blind eye to constitutional violations being committed by

9  subordinates.  See Jett, 439 F.3d at 1098 (prison administrators "are liable for deliberate

10  indifference when they knowingly fail to respond to an inmate's requests for help" (citations

11  omitted)).  Therefore, an individual who denies an inmate appeal and who had the authority and

12  opportunity to prevent an ongoing constitutional violation could potentially be subject to liability

13  if the individual knew about an existing or impending violation and failed to prevent it.  See id.

14  However, plaintiff's allegations fail to state a claim for relief because they do not show that his

15  grievances contained information that would have put either defendant on notice of an ongoing

16  constitutional violation such that they could have intervened.

17         Finally, plaintiff fails to state a claim against Lynch related to the disciplinary write-up he

18  received, as he fails to provide any facts regarding Lynch's involvement or showing that a

19  constitutional right was violated.

20         D.  Leave to Amend

21         The complaint does not state any cognizable claims for relief and plaintiff will be given an

22  opportunity to file an amended complaint.  If plaintiff chooses to file a first amended complaint,

23  he must demonstrate how the conditions about which he complains resulted in a deprivation of his

24  constitutional rights.  Rizzo v. Goode, 423 U.S. 362, 370-71 (1976).  Also, the complaint must

---

25  [1]  Before and since Hines, many district court judges have dismissed Valley Fever cases on

26  qualified immunity grounds, and these dismissals have been routinely affirmed in light of Hines.
   See Duran v. Lewis, 771 F. App'x 828 (9th Cir. 2019) (consolidated appeal citing Hines and

27  affirming dismissals based on qualified immunity); Honesto v. Newsom, 771 Fed. Appx. 834,
   834 (9th Cir. 2019) (same); Oden v. Acebedo, 848 F. App'x 682, 682 (9th Cir. 2021) (same);

28  Bates v. Schwarzenegger, 832 F. App'x 509, 511 (9th Cir. 2020) (same).

1    allege in specific terms how each named defendant is involved.  Arnold v. Int'l Bus. Machs.

2    Corp., 637 F.2d 1350, 1355 (9th Cir. 1981).  There can be no liability under 42 U.S.C. § 1983

3    unless there is some affirmative link or connection between a defendant's actions and the claimed

4    deprivation.  Id.; Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Furthermore, "[v]ague and

5    conclusory allegations of official participation in civil rights violations are not sufficient."  Ivey v.

6    Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

7           Plaintiff is also informed that the court cannot refer to a prior pleading in order to make

8    his first amended complaint complete.  Local Rule 220 requires that an amended complaint be

9    complete in itself without reference to any prior pleading.  This is because, as a general rule, an

10   amended complaint supersedes the original complaint.  Loux v. Rhay, 375 F.2d 55, 57 (9th Cir.

11   1967) (citations omitted), overruled in part by Lacey v. Maricopa County, 693 F.3d 896, 928 (9th

12   Cir. 2012) (claims dismissed with prejudice and without leave to amend do not have to be re-pled

13   in subsequent amended complaint to preserve appeal).  Once plaintiff files a first amended

14   complaint, the original complaint no longer serves any function in the case.  Therefore, in an

15   amended complaint, as in an original complaint, each claim and the involvement of each

16   defendant must be sufficiently alleged.

17          III.     Motion for Appointment of Counsel

18          Plaintiff has requested the appointment of counsel.  ECF No. 8.  The United States

19   Supreme Court has ruled that district courts lack authority to require counsel to represent indigent

20   prisoners in § 1983 cases.  Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989).  In

21   certain exceptional circumstances, the district court may request the voluntary assistance of

22   counsel pursuant to 28 U.S.C. § 1915(e)(1).  Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir.

23   1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990).

24          "When determining whether 'exceptional circumstances' exist, a court must consider 'the

25   likelihood of success on the merits as well as the ability of the [plaintiff] to articulate his claims

26   pro se in light of the complexity of the legal issues involved.'"  Palmer v. Valdez, 560 F.3d 965,

27   970 (9th Cir. 2009) (quoting Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983)).  The burden

28   of demonstrating exceptional circumstances is on the plaintiff.  Id.  Circumstances common to

1    most prisoners, such as lack of legal education and limited law library access, do not establish

2    exceptional circumstances that would warrant a request for voluntary assistance of counsel.

3         Plaintiff seeks appointment of counsel on the ground that he is indigent and the standard

4    for appointing counsel is too high.  ECF No. 8.  While the court understands plaintiff's desire to

5    be represented, he has not demonstrated that exceptional circumstances exist to warrant counsel

6    in this case.  Furthermore, because the complaint does not state a claim for relief, the court cannot

7    find, at this stage, that plaintiff has a likelihood of success on the merits.  For these reasons, the

8    motion will be denied.

9         IV.    Motions for a Temporary Restraining Order

10        Plaintiff has filed motions for temporary restraining order in which he requests an order

11   directing treatment and accommodations for his various conditions.  ECF No. 13, 18, 19.

12        A temporary restraining order is an extraordinary measure of relief that a federal court

13   may impose without notice to the adverse party if, in an affidavit or verified complaint, the

14   movant "clearly show[s] that immediate and irreparable injury, loss, or damage will result to the

15   movant before the adverse party can be heard in opposition."  Fed. R. Civ. P. 65(b)(1)(A).  The

16   standard for issuing a temporary restraining order is essentially the same as that for issuing a

17   preliminary injunction.  Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7

18   (9th Cir. 2001) (stating that the analysis for temporary restraining orders and preliminary

19   injunctions is "substantially identical").

20        "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on

21   the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

22   balance of equities tips in his favor, and that an injunction is in the public interest."  Winter v.

23   Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) (citations omitted).  The propriety of a request

24   for injunctive relief hinges on a threat of irreparable injury that must be imminent in nature.  See

25   Caribbean Marine Servs. Co. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988) ("Speculative injury

26   does not constitute irreparable injury sufficient to warrant granting a preliminary injunction."

27   (citing Goldie's Bookstore, Inc. v. Superior Ct., 739 F.2d 466, 472 (9th Cir. 1984))).

28        Because plaintiff has failed to state a claim for relief, he cannot show that he has any

1   likelihood of success sufficient to warrant a temporary restraining order.  Furthermore, although

2   plaintiff claims that he will be denied necessary medical treatment, he has not presented any

3   evidence beyond his own statements to support that claim.  See Herb Reed Enters., LLC v. Fla.

4   Entm't Mgmt., Inc., 736 F.3d 1239, 1251 (9th Cir. 2013) ("Those seeking injunctive relief must

5   proffer evidence sufficient to establish a likelihood of irreparable harm."); Caribbean Marine

6   Serv., 844 F.2d at 674.  ("A plaintiff must do more than merely allege imminent harm sufficient

7   to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to

8   preliminary injunctive relief."  (emphasis in original) (citing Los Angeles Mem'l Coliseum

9   Comm'n v. Nat'l Football League, 634 F.2d 1197, 1201 (9th Cir. 1980))).

10       For these reasons, the motions for a temporary restraining order should be denied.

11   V.      Motions for a Ruling

12       Plaintiff has filed several motions styled as motions for discovery that are in fact requests

13   that the court screen his complaint and issue rulings on his outstanding motions.  ECF Nos. 14-

14   17.  These motions are granted to the extent that this order screens the complaint and addresses

15   plaintiff's outstanding motions.

16   VI.     Plain Language Summary of this Order for a Pro Se Litigant

17       Your request to proceed in forma pauperis is granted.  That means you do not have to pay

18   the entire filing fee now.  You will pay it over time, out of your trust account.

19       Your complaint will not be served because the facts you alleged are not enough to state a

20   claim.  You have not explained what Ma, Bobbala, and Lynch and did and you have not

21   explained how Uddin's actions ignored a serious risk to your health or safety.

22       It is being recommended that your motions for a temporary restraining order be denied

23   because you have not shown that you are likely to succeed on the merits and you have not

24   provided evidence to support your claims.

25       You may amend your complaint to try to fix these problems.  Be sure to provide facts that

26   show exactly what each defendant did to violate your rights or to cause a violation of your rights.

27       If you choose to file a first amended complaint, it must include all claims you want to

28   bring.  Once an amended complaint is filed, the court will not look at any information in the

original complaint.  **Any claims and information not in the first amended complaint will not be considered.**

In accordance with the above, IT IS HEREBY ORDERED that:

1.  Plaintiff's requests for leave to proceed in forma pauperis (ECF Nos. 6, 7) are GRANTED.

2.  Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.  Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3.  Plaintiff's complaint fails to state a claim upon which relief may be granted, see 28 U.S.C. § 1915A, and will not be served.

4.  Within thirty days from the date of service of this order, plaintiff may file an amended complaint that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice.  The amended complaint must bear the docket number assigned this case and must be labeled "First Amended Complaint."  Failure to file an amended complaint in accordance with this order will result in a recommendation that this action be dismissed.

5.  The Clerk of the Court is directed to send plaintiff a copy of the prisoner complaint form used in this district.

6.  Plaintiff's motion for appointment of counsel (ECF No. 8) is DENIED.

7.  Plaintiff's motions for screening and a ruling on pending motions (ECF Nos. 14-17) are GRANTED to the extent that this order screens the complaint and addresses plaintiff's outstanding motions.

8.  The Clerk of Court shall randomly assign a district judge to this action.

IT IS FURTHER RECOMMENDED that plaintiff's motions for a temporary restraining order (ECF Nos. 13, 18, 19) be DENIED.

These findings and recommendations are submitted to the United States District Judge

10

1   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

2   after being served with these findings and recommendations, plaintiff may file written objections

3   with the court.  Such a document should be captioned "Objections to Magistrate Judges Findings

4   and Recommendations."  Plaintiff is advised that failure to file objections within the specified

5   time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153

6   (9th Cir. 1991).

7   DATED: August 19, 2022

8                                                   ALLISON CLAIRE

9                                                   UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28