UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS MANWELL DAWSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JEFF LYNCH, et al.,<br><br>　　　　Defendants. | No. 2:21-cv-0510 KJM AC P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983. Upon screening the first amended complaint, the court gave plaintiff the option of proceeding on the complaint as screened or filing an amended complaint. ECF No. 42. Plaintiff chose to amend the complaint (ECF No. 43) and has now filed a second amended complaint (ECF No. 49).

I.　　Statutory Screening of Prisoner Complaints

The court is required to screen complaints brought by prisoners seeking relief against "a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or that "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

A claim "is [legally] frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th

1

Cir. 1984). "[A] judge may dismiss . . . claims which are 'based on indisputably meritless legal theories' or whose 'factual contentions are clearly baseless.'" Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989) (quoting Neitzke, 490 U.S. at 327), superseded by statute on other grounds as stated in Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000). The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. Franklin, 745 F.2d at 1227-28 (citations omitted).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "Failure to state a claim under § 1915A incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citations omitted). "[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id. (alteration in original) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hosp. Bldg. Co. v. Trs. of the Rex Hosp., 425 U.S. 738, 740 (1976) (citation omitted), as well as construe the pleading in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969) (citations omitted).

II. First Amended Complaint

Like the first amended complaint, the second amended complaint alleges that defendants Lynch, Bobbala, Soltanian-Zadeh, Ma, Uddin, Rattan, Roth, and Ybarra violated plaintiff's rights under the First and Eighth Amendment.  ECF No. 49.

Plaintiff alleges that, as warden, Lynch is responsible for the function of the prison and ensuring policies are adhered to, and that he condones the denial of medical care.  Id. at 5. Plaintiff further states that he wrote to Lynch and informed him of the deliberate indifference and retaliation he experienced and that Lynch "took deliberate indifference and retaliatory action against [him]" after submitting a grievance against Lynch.  Id.

Plaintiff next alleges that on July 21, 2017, Soltanian-Zadeh told plaintiff that he did not deserve his cane because he had filed an appeal, and proceeded to take plaintiff's cane and discontinue all of his disability verifications and chronos.  Id. at 9-10.  Ten days later, plaintiff went on a hunger strike and was interviewed regarding the hunger strike by Bobbala, at which time she told him that she would reinstate his disability verifications if he stopped his hunger strike.  Id. at 6.  Plaintiff stated that he would only stop the hunger strike once everything was reinstated, but Bobbala refused to reinstate the verifications until plaintiff stopped his hunger strike.  Id.  Later, another doctor manipulated plaintiff into discontinuing his hunger strike by promising, among other things, to reinstate plaintiff's disability accommodations, but instead failed to record the agreement and updated plaintiff's medical records to say that he did not have sarcoidosis disease.  Id.  When plaintiff told Bobbala about the agreement, she told him there was nothing she could do because he does not have sarcoidosis disease.  Id. at 7.  Bobbala also responded to a health care grievance on July 16, 2021, in which she stated that plaintiff had sarcoidosis but all of his other health care issues were resolved.  Id. at 8.  Plaintiff asserts that the information was false, and that Bobbala denied his heart conditions and ignored his inquiries about treatment, constituting deliberate indifference and retaliation.  Id. at 8-9.

In May 2019, plaintiff experienced an extreme bout of pain that caused him to fall to the floor and urinate and defecate on himself which he believes was caused by his azathioprine (an immunosuppressant).  Id. at 10.  He reported this experience and an elbow injury to Ma, who

ordered an elbow x-ray and recorded that plaintiff reported elbow pain and had decreased range of motion, but that plaintiff denied injury, numbness, or weakness. Id. at 10-11. Plaintiff appears to allege that the notation that the denied injury, numbness, or weakness is untrue. Id. at 11. Ma then asked plaintiff why he had medical single-cell status when he did not fit the criteria, to which plaintiff responded that he did fit the criteria because of his chronic sarcoidosis disease with pulmonary sarcoid lung disease and white blood cell disorder. Id. When Ma saw plaintiff for a follow-up to some testing, Ma told plaintiff he had osteopenia and a mild heart condition but did not explain what osteopenia was or where plaintiff had it and did not specify that plaintiff had seven different heart conditions. Id. at 12-13. When Ma once again asked plaintiff about his medical single-cell status, saying he did not qualify because he had to have a contagious disease or have killed a cellmate, plaintiff began to believe that Ma had "done something" to his azathioprine so that he could discontinue plaintiff's single-cell status once he stopped taking the medication. Id. Plaintiff submitted multiple health care grievances, presumably about Ma's treatment, that were denied by Bobbala. Id. at 12. Plaintiff was seen by Ma once again on November 9, 2022, a week after being assaulted by two officers, at which time Ma refused to examine plaintiff or talk about his injuries, saying he was only there to discuss appointment refusals. Id. at 14.

In December 2019, plaintiff had an appointment with Uddin, who proceeded to discontinue his medical single-cell status. Id. Uddin also refused to treat plaintiff's diabetes or order an MRI of plaintiff's brain in retaliation for plaintiff refusing appointments with him and filing a grievance against him, and he discontinued plaintiff's foot orthotics despite knowing plaintiff was in pain without them. Id. at 14-15. After refusing to be seen by Uddin, plaintiff was seen by Rattan, who tried to manipulate plaintiff into getting a COVID-19 vaccination, even though plaintiff should not receive a live vaccine due to one of his conditions. Id. at 15-16. Rattan also refused to see plaintiff in person and diagnosed him with lung allergies without ever having examined plaintiff and them prescribed plaintiff montelukast based on that diagnosis. Id. at 16. Plaintiff had what he believed was an allergic reaction to montelukast after taking it for the first time, refused to continue the medication, and tried to get admitted to the TTA, but medical

staff refused to admit him and told him that if he wanted to be seen he needed to see his primary care provider, Rattan, which plaintiff refused to do. Id. at 17-18. After about a week of being refused treatment at the TTA, plaintiff finally agreed to be seen by Rattan, and when a nurse took his blood pressure she told him he was going to be sent to the emergency room for a medical crisis. Id. at 18. When Rattan arrived, he denied the montelukast was the cause of plaintiff's condition and said it was likely due to other medications and supplements plaintiff had been taking for years before claiming plaintiff's broken tooth was the cause. Id. at 19. He then prescribed antibiotics instead of sending plaintiff to the emergency room. Id.

With respect to correctional staff, plaintiff alleges that Roth, a captain, hated plaintiff due to his hunger strikes and refusal to have a cellmate, and told plaintiff that plaintiff would die before Roth gave him medical single cell status. Id. at 20. He alleges that Roth directed administrative and medical staff to falsify his records and was the cause for most of the treatment he experienced at the hands of the other defendants. Id. at 20-21. Ybarra, a correctional counselor, in concert with Roth, denied him medical single-cell status and a medical transfer to a medical prison. Id. at 22. Internal affairs found there had been staff misconduct by Ybarra and Roth in connection with the classification committee action and reinstated plaintiff's single cell status and in ordered a medical override transfer. Id. Ybarra allegedly conspired with custody officers to assault plaintiff and charge him with batter on a peace officer to stop the transfer. Id.

### III. Deliberate Indifference

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Id. (some internal quotation marks omitted) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). Deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051,

1057 (9th Cir. 2004) (citation and internal quotation marks omitted).

Plaintiff has sufficiently alleged that defendants Soltanian-Zadeh and Bobbala were deliberately indifferent to his serious medical needs when Soltanian-Zadeh discontinued plaintiff's disability verifications and chronos for non-medical reasons and Bobbala refused to reinstate them unless plaintiff stopped his hunger strike.  These defendants will be required to respond to the complaint.

Plaintiff has also stated a claim for relief against Ma based on Ma's refusal to treat plaintiff's injuries after he was assaulted and Ma will be required to respond to this claim.  However, plaintiff fails to state a claim against Ma based on any other alleged conduct.  Plaintiff has alleged, at most, a difference of opinion as to whether he qualifies for medical single-cell status, and a difference of opinion between inmate and prison medical personnel—or between medical professionals—regarding the appropriate course of treatment does not by itself amount to deliberate indifference to serious medical needs.  Toguchi, 391 F.3d at 1058; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  Moreover, plaintiff does not allege that Ma actually discontinued his single cell status, and instead alleges it was discontinued by Uddin.  Similarly, plaintiff's claims regarding Ma's treatment of his elbow and failure to advise plaintiff of his medical conditions to the degree of specificity he believes appropriate also fail to state claims for relief.  The allegations show that Ma examined plaintiff's elbow and ordered an x-ray, and plaintiff fails to establish that Ma's failure to inform him of the specifics of his conditions was inappropriate or created an excessive risk to plaintiff's health.  Finally, the claim that Ma did something to plaintiff's medication also fails to state a claim for relief because it is based on pure speculation.

With respect to defendant Uddin, plaintiff has stated a claim against this defendant based on Uddin's discontinuation of plaintiff's orthotics despite his continued need for them and Uddin will be required to respond to this claim.  However, Uddin's discontinuation of plaintiff's single cell status fails to state a claim for relief.  The allegations establish no more than a difference of opinion as to what plaintiff's proper status should be, and even assuming that Uddin improperly changed that status, it is unclear what excessive risk to plaintiff's health Uddin ignored in doing

so. The claims that Uddin refused to treat plaintiff's diabetes or order an MRI also fail to state claims for relief because plaintiff does not explain how Uddin failed to treat his diabetes or demonstrate that the failure to order an MRI was medically inappropriate.

Finally, plaintiff fails to state any claims for relief against defendant Rattan. The claim that Rattan tried to manipulate plaintiff into getting a COVID-19 vaccination even though he was not supposed to receive a live vaccine fails because none of the vaccines contain a live virus[1] and it does not appear plaintiff actually received a vaccination. Additionally, though plaintiff claims Rattan refused to see him in person, he does not identify what conditions Rattan refused to see him for, and even assuming that plaintiff had an allergic reaction to montelukast, there is no indication that Rattan knew plaintiff was allergic. Plaintiff also fails to allege facts showing that Rattan was responsible for medical staff refusing to admit plaintiff to the TTA, and although Rattan did not send plaintiff to an outside hospital, he did prescribe plaintiff with a course of antibiotics, and there are no facts showing that plaintiff required additional treatment.

IV.   Retaliation

Plaintiff has sufficiently alleged that Soltanian-Zadeh's discontinuation of his disability verifications and chronos was retaliatory, see Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (retaliation claim must include allegation that defendant took adverse action against plaintiff because of his protected conduct and that the action chilled plaintiff's exercise of First Amendment rights and lacked legitimate correctional goal), and Soltanian-Zadeh will be required to respond to this claim. However, plaintiff's claim that Uddin retaliated against him for refusing appointments and submitting grievances fails to state a claim because refusing appointments is not protected conduct, it is unclear what conduct was retaliatory, and there are no facts to support an inference that any of Uddin's conduct was due to plaintiff filing a grievance beyond plaintiff's conclusory assertion that Uddin retaliated against him.

////

---

[1] See Center for Disease Control, Bust Myths and Learn the Facts about COVID-19 Vaccines (June 24, 2024), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/facts.html [https://perma.cc/C36F-MP59].

7

V.   Grievances

With respect to plaintiff's claims that Bobbala denied his grievances, prison administrators cannot willfully turn a blind eye to constitutional violations being committed by subordinates. See Jett, 439 F.3d at 1098 (prison administrators "are liable for deliberate indifference when they knowingly fail to respond to an inmate's requests for help" (citations omitted)). Therefore, an individual who denies an inmate appeal and who had the authority and opportunity to prevent an ongoing constitutional violation could potentially be subject to liability if the individual knew about an existing or impending violation and failed to prevent it. See id. However, plaintiff's allegations fail to state a claim for relief because they do not show that his grievances contained information that would have put Bobbala on notice of an ongoing constitutional violation such that she could have intervened.

A. Personal Involvement

"Liability under § 1983 must be based on the personal involvement of the defendant," Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998) (citing May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980)), and "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient," Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted). Because plaintiff makes only conclusory allegations that defendants Roth and Ybarra violated his rights, he fails to state a claim for relief against them. There are no facts to support plaintiff's conclusory assertion that Roth directed the medical defendants' conduct or that Ybarra had other custody officers assault plaintiff and write him up on a false disciplinary. It is further unclear how Roth and Ybarra, as correctional staff, would have had the authority to make decisions regarding plaintiff's medical status, particularly in light of plaintiff's allegation that Uddin was the one who cancelled his medical single cell status.

With respect to Lynch, "[t]here is no respondeat superior liability under section 1983," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted), and plaintiff has not alleged facts showing either Lynch's personal involvement in the alleged violations or a causal connection between Lynch's conduct and the violation, see Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)). It appears that

Lynch has been named as a defendant based solely on his position as warden, which is insufficient to state a claim for relief. Although plaintiff claims that Lynch was deliberately indifferent and took retaliatory action against him, he fails to identify any action taken by Lynch and he fails to allege any facts demonstrating that Lynch was aware of an ongoing constitutional violation in which he could have intervened.

### VI. No Leave to Amend

Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc). However, if, after careful consideration, it is clear that a complaint cannot be cured by amendment, the court may dismiss without leave to amend. Cato v. United States, 70 F.3d 1103, 1105-06 (9th Cir. 1995).

The undersigned finds that, as set forth above, the complaint states claims for deliberate indifference and retaliation against Soltanian-Zadeh based on the discontinuation of plaintiff's disability verifications and chronos and for deliberate indifference against Bobbala for refusing to reinstate the verifications and chronos. Plaintiff has also stated claims for deliberate indifference against Uddin for discontinuing his orthotics and against Ma for refusing to treat his injuries after being assaulted. Plaintiff does not state any other viable claims against these defendants and does not state any claims for relief at all against Rattan, Roth, Ybarra, and Lynch. Plaintiff has already been given two opportunities to amend the complaint and advised what kind of information he needed to provide. He was also cautioned that this would be his final opportunity to amend the complaint. ECF No. 44. Considering the additional facts provided by plaintiff, and that in many instances he provided no additional facts, it does not appear that further amendment would result in a cognizable claim. As a result, leave to amend would be futile and all claims against Rattan, Roth, Ybarra, and Lynch should be dismissed without leave to amend. The claims against Soltanian-Zadeh, Bobbala, Uddin, and Ma should also be dismissed without leave to amend, except as noted above. By separate order the court will direct e-service on defendants Soltanian-Zadeh, Bobbala, Uddin, and Ma.

////

VII. <u>Plain Language Summary of this Order for a Pro Se Litigant</u>

Some of the allegations in the complaint state claims against the defendants and some do not. You have stated a claim for deliberate indifference against defendants Soltanian-Zadeh and Bobbala based on the revocation and failure to reinstate your disability verifications and chronos and against Soltanian-Zadeh for retaliation. You have also stated claims for deliberate indifference against Uddin for discontinuing your orthotics and Ma for failing to treat your injuries after being assaulted. You have not stated any other claims against these defendants, and you have not stated any claims at all against Lynch, Rattan, Roth, and Ybarra. It is being recommended that these claims and defendants be dismissed.

CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. The allegations of the second amended complaint state claims for (1) deliberate indifference and retaliation against Soltanian-Zadeh based on the discontinuation of plaintiff's disability verifications and chronos; (2) deliberate indifference against Bobbala for refusing to reinstate the verifications and chronos; (3) deliberate indifference against Uddin for discontinuing plaintiff's orthotics; and (4) deliberate indifference against Ma for refusing to treat plaintiff's injuries after he was assaulted. Service is therefore appropriate for these defendants.

2. E-service on defendants Soltanian-Zadeh, Bobbala, Uddin, and Ma will be directed by separate order. Plaintiff should not complete service paperwork for these defendants unless ordered to do so by the court.

IT IS FURTHER RECOMMENDED that all claims and defendants be dismissed without leave to amend except for the claims for (1) deliberate indifference and retaliation against Soltanian-Zadeh based on the discontinuation of plaintiff's disability verifications and chronos; (2) deliberate indifference against Bobbala for refusing to reinstate the verifications and chronos; (3) deliberate indifference against Uddin for discontinuing plaintiff's orthotics; and (4) deliberate indifference against Ma for refusing to treat plaintiff's injuries after he was assaulted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days

after being served with these findings and recommendations, plaintiff may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judges Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 25, 2024

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

11